## FINNEY and others *v.* GRAND TRUNK RY. CO.

*(District Court, N. D. Illinois.   1882 )*

1. SHIPPING—DISCHARGE OF CARGO—DEMURRAGE.

Where a cargo of corn was unloaded as soon as practicable at defendant's elevator, it being the only elevator at the port of arrival, defendant is not liable for demurrage, notwithstanding there was a delay in unloading the cargo arising from the fact that other vessels had arrived before the libelant's vessel, and preference was given to them in unloading.

2. SAME—CHARTER—PRESUMPTIONS.

A party making a charter of his vessel must be presumed to know the course of business at the port of destination, and that his vessel must wait until vessels which arrived before his were unloaded.

3. SAME.

Where there was no stipulation in the charter-party that the vessel should be unloaded within any special time, nor for quick dispatch, her owner cannot recover for delay caused by awaiting her turn for unloading.

*W. H. Condon,* for libelant.

*Chas. E. Kremer,* for respondent.

BLODGETT, D. J.    This is a libel for damages by the owners of the schooner George C. Finney, by reason of alleged unreasonable delay in the discharge of the cargo of the schooner at Goderich.    The undisputed facts are these:    That the schooner was chartered in the city of Chicago, on October 18, 1880, to carry a cargo of corn to Goderich, Canada.    She took on her cargo, and sailed the day after she was chartered, which was October 19th.    Her bill of lading showed a shipment of 20,055 bushels of corn at the port of Chicago, to be transported to Goderich, and there delivered "for account of G. P. Comstock & Co.," "in care of the Grand Trunk Railway Company."    No promise was made for any special time in which the cargo was to be discharged; nor was there any clause in the bill of lading requiring dispatch in discharging.    The schooner arrived at Goderich on the morning of October 23d, and her captain reported that he was ready to begin unloading that morning, but he was told that there were five other vessels ahead of him, and he must wait his turn.    The Grand Trunk Railway had only one elevator at Goderich, and it took until the afternoon of October 30th to unload the five vessels which had arrived and reported ahead of the Finney.    On the afternoon of the 30th they began unloading the Finney, but owing to rough weather they were unable to fully discharge her cargo till about noon of the first of November.

I think there can be no doubt of the statement that she was unloaded as soon as it was practicable to do so, at the Grand Trunk elevator, giving precedence to the vessels which had arrived ahead of her with cargoes consigned to the same elevator. The only question in the case is whether the schooner was obliged to await her turn to be unloaded, and whether, there being no stipulation that she should be unloaded within any special time, nor for quick dispatch, her owners can recover for the delay as unreasonable. The parties to the charter must be presumed to have been acquainted with the course of business at the port of destination. It must be assumed that the libelant, or those acting for him in making the charter of his vessel, knew that there was only one elevator belonging to the Grand Trunk Railway Company at Goderich, and that. this cargo which he contracted to deliver to the care of that railway company must be unloaded at this elevator.

It also appears from the proof that libelant and his agent, through whom the charter was made, was aware of the fact that other vessels had been chartered for the same port, one of which was owned by libelant, and had sailed only a few days before the charter of the Finney. So he must have known that other vessels were ahead of the Finney, and that she could not be unloaded till after they were, if she arrived after they did. In other words, he must be held to have known that his schooner must be unloaded at the Grand Trunk elevator; that she must wait until vessels which had arrived before her were unloaded; and he knew that others had been chartered and sailed in advance of him, and might possibly, if not probably, have the right to be unloaded ahead of the Finney. This view seems to be fully sustained by the supreme court of the United States in *The Convoy's Wheat*, 3 Wall. 225, and also in *Cross* v. *Beard*, 26 N. Y. 91; *The Glover*, 1 Brown, 167; Abb. Shipp. 311; *Henley* v. *Brooklyn Ice Co.* 8 Ben. 471; S. C. 14 Btatchf. 522. There is no proof that the schooner was not unloaded as soon as she could be if she was required to await her turn at the elevator. True, there was one day after the unloading commenced in which they were unable to work on account of the weather, the wind blowing from such a direction as to cause so much sea at the elevator as to make it impossible to work the machinery. This was a sufficient cause for the delay which intervened between the beginning and completion of the unloading.

The further point was made by the defense that the respondent, not being the owner of the cargo of the schooner, but only a carrier

who was to transport it by rail from Goderich to its final destination, is not liable in this action for demurrage; but, with the view I take of the law on the admitted facts, I do not deem it necessary to pass on that question.

The findings of the court will be that the respondent was not in fault, and the libel is dismissed for want of equity.